IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-448

No. COA22-78

Filed 5 July 2022

Catawba County, No. 19 CVD 2327

IRENE DRUM, Plaintiff,

v.

STEPHANIE DRUM and BILLY JOE HINSON, Defendants.

Appeal by defendant from judgment entered 7 July 2021 by Judge Robert A. Mullinax, Jr. in Catawba County District Court. Heard in the Court of Appeals 8 June 2022.

*King Law Offices, PLLC, by Patrick W. Keeley, for plaintiff-appellee.*

*LeCroy Law Firm, PLLC, by M. Alan LeCroy, for defendant-appellant Billy Joe Hinson.*

TYSON, Judge.

Billy Joe Hinson ("Defendant") appeals from a final judgment awarding Irene Drum ("Plaintiff") primary physical custody of the minor child, A.V.D, entered 7 July 2021. *See* N.C. R. App. P. 42 (Initials used to protect the identity of minor child). We affirm.

**I.    Background**

Defendant is the biological father of A.V.D. born 20 January 2014. Stephanie

Drum ("Stephanie") is the biological mother of A.V.D. but is not a party in this appeal. Defendant and Stephanie never married. Plaintiff is A.V.D.'s maternal grandmother. A.V.D. has lived with Plaintiff since she was between six and eight months old.

¶ 3        Defendant was present at A.V.D.'s birth. A.V.D.'s birth certificate is not included in the record on appeal. Defendant often visited with Stephanie and A.V.D. during the first six to eight months of A.V.D.'s life. Those visits became less frequent when A.V.D. and Stephanie moved in with Plaintiff.

¶ 4        Stephanie abuses illegal substances and has been absent for extended periods of A.V.D.'s life. Plaintiff has served as A.V.D.'s primary caretaker and parental figure for most of her life. Along with Plaintiff's ex-husband, they have fed A.V.D. kept her on schedule, taken her to and picked her up from school, helped her with homework, and taken her on vacations. Plaintiff's ex-husband provides $800.00 per month to help Plaintiff support A.V.D.

¶ 5        Defendant is a truck driver who travels the road most days during the week and has driven for most of A.V.D.'s life. Defendant has seen A.V.D. sporadically throughout her life. Defendant has never sought overnight visits with her. He accumulated over $10,000.00 in arrears of ordered child support. Defendant was incarcerated on one occasion related to those arrears and lives with his parents to help ensure his ability to provide support. Defendant provides Plaintiff $660.00 per month in A.V.D.'s child support.

¶ 6        Child Protective Services ("CPS") contacted Defendant in 2018 about issues with and concerns about A.V.D. relating to Stephanie's substance abuse. Defendant testified he did "stay back and see what happened" during CPS' involvement, because he knew A.V.D. was being "taken care of." Defendant testified and admitted he did not ask the court for overnight visitation with or custody of A.V.D. until these proceedings commenced.

¶ 7        Plaintiff filed a Complaint for Child Custody on 13 August 2019. An *ex parte* order for immediate temporary custody of A.V.D. was granted that day. Plaintiff was granted temporary legal and physical custody of A.V.D. on 22 October 2019, and Defendant was allowed visitation. An additional order granting Plaintiff temporary legal and physical custody, with Defendant again allowed visitation, was entered 27 January 2020.

¶ 8        On 7 July 2021, the trial court entered its Order of Child Custody. The trial court found Stephanie is not a fit or proper person for the care, custody, or control of A.V.D., and the trial court prohibited visitation. Since these proceedings have commenced, Defendant has exercised his visitation and brought A.V.D. gifts. The trial court granted joint legal custody between Plaintiff and Defendant, and primary physical custody to the Plaintiff, again allowing Defendant visitation. Defendant appeals.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2021).

### III. Issues

The issues before this Court are: (1) did the Plaintiff have standing to obtain custody of the minor child; and, (2) whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence to support the conclusions of law that Defendant has acted inconsistently with his constitutionally-protected status and rights as a parent.

### IV. Analysis

The Supreme Court has stated the parental rights axiom: "The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and [r]ights far more precious . . . than property rights. It is cardinal . . . the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 558-559 (1972) (citations and internal quotation marks omitted).

"North Carolina's recognition of the paramount right of parents to custody, care, and nurture of their children antedates the constitutional protections set forth in *Stanley*." *Petersen v. Rogers*, 337 N.C. 397, 402, 445 S.E.2d 901, 904 (1994).

### A. Standing

Defendant argues the trial court did not have subject matter jurisdiction to

hear the case because Plaintiff lacked standing to seek custody of A.V.D.

### 1. *Standard of Review*

Standing is required in order to maintain subject matter jurisdiction. *Wellons v. White*, 229 N.C. App. 164, 176, 748 S.E.2d 709, 718 (2013). The Court reviews a plaintiff's standing to bring a claim *de novo*. *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001).

### 2. *N.C. Gen. Stat. § 50-13.1(a)*

Under N.C. Gen. Stat. § 50-13.1(a), "[a]ny parent, relative, or other person . . . claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child[.]" N.C. Gen. Stat. § 50-13.1(a) (2021). "To receive custody under N.C. Gen. Stat. § 50-13.1(a), grandparents must prove parental unfitness." *Wellons*, 229 N.C. App. at 174, 748 S.E.2d at 717 (citation omitted).

Plaintiff is the maternal grandmother of A.V.D. and clearly has standing to institute an action for custody of her. N.C. Gen. Stat. § 50-13.1(a). Plaintiff has raised A.V.D. for the past eight years since she was between six and eight months old. Defendant asserts Plaintiff must show unfitness, or the Defendant acted inconsistently with his constitutionally-protected status in order to gain custody. The Plaintiff has standing to bring the action for custody of A.V.D., yet must still show Defendant's violation of his constitutionally-protected status. *Id.*

### B. Constitutionally-Protected Parental Status

Defendant argues the trial court's determination he had acted inconsistently with his constitutionally-protected parental status is not supported by clear and convincing evidence. Defendant also argues the trial court's findings of fact and conclusions of law do not support its determination Plaintiff should be awarded primary physical custody.

### 1. *Standard of Review*

"[A] trial court's determination that a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence." *Adams v. Tessener*, 354 N.C. 57, 63, 550 S.E.2d 499, 503 (2001) (citation omitted). "[T]he trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Owenby v. Young*, 357 N.C. 142, 147, 579 S.E.2d 264, 268 (2003). "Whether those findings of fact support the trial court's conclusions of law is reviewable *de novo*." *Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008) (citation omitted).

### 2. *Conduct Inconsistent with Protected Parental Status*

"The Supreme Court of North Carolina has held, 'a natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status.'" *In re A.W.*,

280 N.C. App. 162, 165-66, 2021-NCCOA-586, ¶16, 867 S.E.2d 235, 239 (2021) (quoting *David N. v. Jason N.*, 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005)).

¶ 20 "[G]randparents have standing to intervene for custody when they allege acts that would constitute [parental] unfitness, neglect [or] abandonment, or any other type of conduct so egregious as to result in [the parent's] forfeiture of his [or her] constitutionally protected status as a parent." *Wellons*, 229 N.C. App. at 176, 748 S.E.2d at 718-19 (citation and internal quotation marks omitted).

¶ 21 "[Grandparents] must allege specific facts showing parental unfitness, such as: (i) the parents have not provided safe and suitable housing for their children; (ii) the parents have not contributed to child support; (iii) the parents have not been involved in the children's upbringing; and (iv) the children are at substantial risk of harm from the parents." *Id.*, 748 S.E.2d at 719 (citation and internal quotation marks omitted). Plaintiff has already made that required showing of parental unfitness in relation to Stephanie, A.V.D.'s mother, who did not appeal.

¶ 22 Defendant contends the following Findings of Fact that he ceded care of A.V.D. to Plaintiff are erroneous and unsupported by clear and convincing evidence:

> 10. That the minor child resided with [Stephanie] at a Mayberry Lane address, located adjacent to Lake Norman, for the first 6-8 months of her life. During that first 6 to 8 months of the minor child's life, the Plaintiff resided in the Balls Creek community but did assist [Stephanie] in feeding and bathing the minor child as well as insuring she was current on immunizations and received appropriate

medical care.

11. That after some 6 to 8 months, the Plaintiff moved into the Mayberry Lane residence with the minor child and [Stephanie]. She observed [Stephanie] abusing [X]anax and medication for ADHD.

. . .

13. That beginning from the time she moved into the Mayberry Lane residence, the Plaintiff has served as the primary caretaker for the minor child. She served in that capacity in spite of the fact that for the overwhelming majority of the minor child's life, [Stephanie] has been unemployed.

. . .

43. That for the first 6 to 8 months of the minor child's life, [Defendant] visited the child's residence located on Mayberry Lane. His visits ceased when the Plaintiff moved into that residence. He did visit with the child some at his home which has a bouncy contraption, as well as [at] Concord Mills Mall. Those visits were coordinated between the Plaintiff and . . . Defendant's mother on an almost monthly basis.

44. That . . . Defendant acknowledged in lieu of providing constant provision and care for his daughter that he had "been a truck driver most of her life."

. . .

61. That . . . Defendant has failed to provide sufficient explanation for his absence in parenting his daughter. . . .

62. That the Court finds, by clear, cogent and convincing evidence that that absence of . . . Defendant represents a relinquishment to the Plaintiff of the duties and

> responsibilities of parenthood such that . . . Defendant has waived his constitutionally protected status as biological father to the minor child.
>
> . . .
>
> 64. That the evidence has been overwhelming that the Plaintiff has, without exception, underwent the heavy lifting of parenting the minor child, including providing her with food, clothing and ensuring her physical, spiritual and mental development for the great majority of the child's life.

¶ 23 Defendant argues he did not abandon or cede custody, care, and control of A.V.D. to Plaintiff. He contends he reasonably believed the biological mother was providing primary care. He argues he was never made aware that Plaintiff, and not Stephanie, was providing A.V.D.'s primary care.

¶ 24 Our Supreme Court stated, "if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (citations omitted). That Court later stated, "a period of voluntary nonparent custody, may constitute conduct inconsistent with the protected status of natural parents." *Price v. Howard*, 346 N.C. 68, 79, 484 S.E.2d 528, 535 (1997). "[T]here must be some conduct on [the natural parents] part which evinces a settled purpose to forego all parental duties. But merely permitting the child to remain for a time undisturbed in

the care of others is not such an abandonment." *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608 (internal quotation marks and citations omitted).

¶ 25        Defendant has acted inconsistently with his constitutionally-protected status as a parent. His contact with A.V.D. was sporadic and minimal between the time she went to live with Plaintiff until these proceedings began. Defendant offers little to no evidence to controvert the trial court's findings on this issue. The fact he did not know or was ignorant that Plaintiff was the primary caregiver and raising A.V.D. is a clear withholding of his "presence, his love, his care, the opportunity to display filial affection, and wilfully neglect[ed] to lend support and maintenance." *Id.* Plaintiff performed the daily and brunt work of raising A.V.D., while Stephanie absented herself and abused illegal substances. Defendant lived his life on the road without continuous regard for or checking in on A.V.D.'s wellbeing.

¶ 26        Defendant voluntarily left A.V.D. in the care of her biological mother and Plaintiff, he never showed any interest in extended visitation or gaining custody of her for nearly five years until 2019 when Plaintiff began formal proceedings to obtain custody.

¶ 27        Our Supreme Court in *Price* concluded this voluntary and continuous period of custody with Plaintiff with no specified end, is conduct that is inconsistent with the constitutionally-protected status of natural parents. Clear and convincing evidence shows Defendant knowingly ceded daily care and support of A.V.D. to the biological

mother, and in reality, to Plaintiff. Defendant failed to check on A.V.D. and took few affirmative steps as a parent to ensure her upbringing and welfare until commencement of these proceedings. The trial court's findings and conclusions that Defendant has acted inconsistently with his constitutionally-protected status as a parent is supported by clear and convincing evidence.

¶ 28  Defendant contests the following Findings of Fact that he was willfully absent following knowledge of Plaintiff's care of A.V.D. and commencement of custody proceedings.

> 53. That in late 2018, Child Protective Services contacted . . . Defendant about problems with the minor child. At that time, he hadn't [sic] seen the child for a period of several months.
>
> 54. That . . . Defendant also did not see the minor child for a period of several months prior to the Plaintiff filing a complaint in August, 2019.
>
> 55. That in spite of these significant absences, . . . Defendant made no affirmative efforts to assert any rights he may or may not have as the father of the minor child. In fact, only did so in response to the Plaintiff's Complaint.
>
> 56. That . . . Defendant acknowledged, by Answer and Counterclaim of August 30, 2019 being aware of [Stephanie]'s criminal issues as well as her substance abuse . . . .
>
> . . .
>
> 59. That . . . Defendant acknowledges staying back and seeing what happens after receiving · the late 2018 CPS

report. He acknowledges knowing that his daughter was under the appropriate care of the Plaintiff. That knowledge significantly eased any sense of urgency he might have had to act.

¶ 29 Our Supreme Court has held "if a parent cedes paramount decision-making authority, then, so long as he or she creates no expectation that the arrangement is for only a temporary period, that parent has acted inconsistently with his or her paramount parental status." *Boseman v. Jarrell*, 364 N.C. 537, 552, 704 S.E.2d 494, 504 (2010).

¶ 30 While Defendant challenges these findings, his testimony shows he was made aware of A.V.D.'s care by Plaintiff and admits failing to take action then to assert or exercise his parental rights. In *Price*, the court explicitly stated "failure to resume custody when able" could be conduct inconsistent with a parent's constitutionally-protected status. Here, Defendant knew his child was in Plaintiff's primary custody, was made aware he should seek custody, and he refused. His actions are inconsistent with his constitutionally-protected status as a parent. *Id.* He has withheld his love and affection, and did not take affirmative steps to obtain custody of A.V.D. when he could have or knew of Stephanie's drug use and criminal issues. Plaintiff has raised A.V.D. for the past eight years since she was six to eight months old. Plaintiff has taken her to school, sheltered, fed, and clothed her, and provided a safe, comfortable, and structured life for A.V.D.

¶ 31    Defendant proffered no evidence tending to show the trial court's findings were not based on clear and convincing evidence.  Defendant showed no real interest in A.V.D. until Plaintiff began these proceedings.  Since these proceedings began, Defendant has kept up with support payments, alleviating prior arrearages.  He has visited A.V.D. regularly and has taken more of an interest in her life.  While these changes are positive and laudable, they do not make up for the years of safe and responsible child-rearing Plaintiff has provided for A.V.D.in Defendant's absence.

¶ 32    Defendant has failed to show the findings of fact he challenged are unsupported by clear and convincing evidence.  Defendant has acted inconsistently with his constitutionally-protected status by ceding care to Plaintiff for years, all while making no affirmative efforts to visit or gain custody of A.V.D.  The conclusions of law are supported by the findings of fact.  Defendant's arguments are without merit.

### 3.  Failure to Support

¶ 33    A parent may forfeit his constitutionally–protected status as a parent if "[t]he juvenile has been placed in . . . a foster home, and the parent has . . . willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so."  N.C. Gen. Stat. § 7B-1111(a)(3) (2021).  "[T]here is no requirement that the trial court make a finding as to what specific amount of support would have constituted a 'reasonable portion' under the circumstances."  *In re Huff,*

140 N.C. App. 288, 293, 536 S.E.2d 838, 842 (2000).

¶ 34        Here, Defendant willfully failed to pay court-ordered support to Plaintiff for A.V.D.'s care.  Defendant sought to pay less in support because he was making less money, the request was denied.  Defendant decided voluntarily to pay nearly half of the ordered amount.  This willful neglect of support, when Defendant had the physical and financial ability to, is grounds for finding he acted contrary to his constitutionally-protected status as a parent.  Defendant since has kept up with support payments, but for nearly a year voluntarily and willfully withheld support from A.V.D. which further supports the trial court's findings and conclusion Defendant acted inconsistent with his constitutionally-protected status as a parent.

## V.    Conclusion

¶ 35        "[G]randparents have standing to intervene for custody when they allege acts that would constitute [parental] unfitness, neglect [or] abandonment, or any other type of conduct so egregious as to result in [the parent's] forfeiture of his [or her] constitutionally protected status as a parent."  *Wellons*, 229 N.C. App. at 176, 748 S.E.2d at 718-19 (citation and internal quotation marks omitted).

¶ 36        Plaintiff is the maternal grandmother of A.V.D. and has been the primary caretaker of her since she was six to eight months old.  A.V.D.'s mother abandoned her to Plaintiff. Plaintiff has raised A.V.D. and provided a stable and structured life neither of her biological parents would.  It is clear Plaintiff has standing under N.C.

Gen. Stat. § 50-13.1(a) to seek and obtain custody.

¶ 37        Defendant has acted inconsistently with his constitutionally-protected status as a natural parent.  He has been absent from her life during her upbringing for nearly five years.  Defendant voluntarily ceded care to Plaintiff, failed to pay court-ordered support, and made no affirmative efforts to exercises parental rights, visit, or to obtain custody until this proceeding began.  As such, the trial court's findings of fact are supported by clear and convincing evidence, and those findings support the court's conclusions.  The trial court's order is affirmed.  *It is so ordered.*


        AFFIRMED.

        Judges DILLON and JACKSON concur.