An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-1128

Filed 6 May 2026

Moore County, No. 21CVD001254-620

WANDA GAIL REEVES, Plaintiff,

v.

CHRISTOPHER TOLEN and
KRISTI REEVES TOLEN, Defendants.

Appeal by Defendant Kristi Reeves Tolen from order entered 18 April 2024 by Judge Warren McSweeney in Moore County District Court. Heard in the Court of Appeals 26 August 2025.

> *Van Camp & Van O'Linda, PLLC, by Claire C. Washburn and William M. Van O'Linda, Jr. for plaintiff-appellee.*
>
> *No brief for Christopher Tolen, pro se defendant-appellant.*
>
> *Kristi Reeves Tolen, pro se defendant-appellant.*

PER CURIAM.

Defendant Kristi Reeves Tolen ("Mother") appeals from order granting permanent child custody to *her* mother, Plaintiff Wanda Gail Reeves ("Grandmother"). Mother challenges subject matter jurisdiction of the trial court to

act; and, alternatively, she argues the trial court erred in various ways in its order; for instance, that the trial court improperly concluded that Mother had acted inconsistently with her parental rights. For the foregoing reasons, we conclude the trial court properly exercised subject matter jurisdiction, but we vacate and remand on the remaining issues.

## I. Background

Defendants are the biological parents of Riley (a pseudonym), born in 2016. Defendants served as the primary caregivers for Riley in Georgia until December 2019 when Defendants were arrested on theft-related charges. Around the time of her arrest, Mother voluntarily executed and recorded a Power of Attorney in favor of Grandmother, granting her the exclusive care and parental rights of Riley, whereupon Riley began living with her in North Carolina.

Mother was subsequently sentenced in April 2020 to a five-year suspended sentence, supervised probation, a $1,000 fine, and an active split sentence of 180 days.

In September 2021, Grandmother filed an action in Moore County District Court seeking custody of Riley. For over two years, between June 2020 and November 2022, Mother had no physical contact with Riley, she did not provide Grandmother with any financial support for Riley's care, she took no legal action to try to regain custody of Riley, and she did not provide a living place for Riley.

On 12 October 2021, the trial court entered an Order denying Ex Parte Custody Motion in response to Mother's motion. In this Order, the trial court found that North

Carolina was the home state of Riley and that the court had jurisdiction under the UCCJEA. The trial court also noted that Mother had granted a Power of Attorney for Custody of a Minor Child which was filed in Jones County, Georgia, in December 2019. The findings in this order included the fact that Mother "left the child with [Grandmother] during and after her release from prison in the State of Georgia."

On 1 November 2022, the trial court entered handwritten memorandum of Judgment/Order regarding custody and visitation, by consent. The Memorandum Order was entered without prejudice. Under this Memorandum Order, beginning in November 2022, Mother began having supervised visits with Riley for several hours every other weekend in North Carolina, driving six hours each way from her home in Georgia. Mother was late on multiple occasions for these visitations and maintained sporadic communication with Riley during this time. On 16 November 2022, the trial court entered a formal consent order based on the Memorandum Order.

As of April 2024, Mother resided with an individual who tested positive for methamphetamine in summer 2022, despite Mother's previous substance use issues.

In April 2024, after a hearing on the matter, the trial court entered an order ending the temporary custody arrangement between Grandmother and Mother and granted sole legal and primary physical custody to Grandmother, providing Mother with unsupervised visits. In this permanent custody order, the trial court found Mother acted inconsistent with her constitutionally protected rights. Additionally, the court found that Riley was doing well in speech therapy in North Carolina, was

attending school in North Carolina, and was supported by family and community members in North Carolina. Mother appeals.

## II. Analysis

Mother presents four arguments on appeal. We address the first issue of whether there is subject matter jurisdiction and vacate and remand on the remaining three issues because it is not clear from the permanent custody order whether the trial court applied the clear and convincing standard of proof applicable in a custody case between a parent and non-parent. *Adams v. Tessener*, 354 N.C. 57, 63 (2001) (determining whether a parent has acted inconsistent with her constitutionally protected status must be reviewed under a clear, cogent, and convincing standard); *Bennett v. Hawks*, 170 N.C. App. 426, 428 (2005) (custody order must indicate the court applied the clear and convincing standard in determining whether a parent's conduct is inconsistent with her constitutionally protected status).

## A. Subject Matter Jurisdiction

We first address Mother's argument that North Carolina lacks subject matter jurisdiction over the custody determination and visitation schedule regarding Riley, as she resides in Georgia, on two separate grounds, which we address in turn. In addressing Mother's arguments, we note a determination of subject matter jurisdiction at the trial court level is a question of law, reviewed *de novo* on appeal. *In re A.L.L.*, 376 N.C. 99, 101 (citation omitted). *De novo* review permits our Court to consider the matter "anew and freely substitute[ ] its own judgment for that of the

trial court." *In re K.S.*, 380 N.C. 60, 64 (2022) (citation omitted) (cleaned up).

### 1. Home State

Mother contends Georgia, and not North Carolina, has exclusive jurisdiction over Riley's custody.

The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") governs jurisdiction. *See* N.C.G.S. § 50A-101. The UCCJEA as adopted in North Carolina provides that a trial court has subject matter jurisdiction to enter an initial child custody order when the state is the "home state" of the child when the proceeding starts, or within six months prior to commencement of the proceeding. *Id.* § 50A-201(a)(1). A child's "home state" is where the child resides with a parent or a "person acting as a parent" for a minimum of six months preceding the filing of the case. *Id.* § 50A-102(7). A "person acting as a parent" is a person, not a parent, who both:

> (a) Has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child-custody proceeding; and
>
> (b) Has been awarded legal custody by a court or claims a right to legal custody under the law of this State.

*Id.* § 50A-102(13). It is a central tenet of the UCCJEA to prioritize a child's home state to avoid jurisdictional conflicts in child custody matters. *Sulier v. Veneskey*, 285 N.C. App. 644, 666 (2022) (citation omitted).

Temporary absences are included as part of the six-month period preceding the commencement of child custody proceeding to determine a child's home state. N.C.G.S. § 50A-102(7). An absence from a state constitutes "temporary absence" on a case-by-case basis. *See, e.g., Pheasant v. McKibben*, 100 N.C. App. 379, 384 (1990). North Carolina uses a totality of circumstances approach to determine whether an absence was temporary. *See Chick v. Chick*, 164 N.C. App. 444, 449–50 (2004). Factors considered in the totality of the circumstances approach include: (a) the facts of each case; (b) the parties' intent and length of absence as deemed important by any sister states in making a temporary absence determination; and (c) any additional circumstances "that may be presented in the multiplicity of factual settings in which child custody jurisdictional issues may arise." *See id.* at 450.

We disagree with Mother's argument. First, we note Grandmother is a "person acting as a parent" under the UCCJEA. She maintains physical custody over Riley and has done so since the execution of the Power of Attorney. Subsequently, a temporary custody order entered on 27 March 2023, awarded Grandmother primary physical custody and joint legal custody. Subject matter jurisdiction is determined at the time of filing of the proceeding, and Riley had been living in North Carolina with Grandmother since December 2019.

Second, there is no question Riley was living in North Carolina for the required six months prior to the commencement of the Grandmother's custody proceedings. It is uncontested Riley has not resided in Georgia, where Mother presently resides,

since approximately December 2019.  Based on the record before us, we conclude the trial court did not err by determining that North Carolina is Riley's home state.

Likewise, even if North Carolina declined to exercise home state jurisdiction under G.S. 50A-207 or G.S. 50A-208, *or* there was no home state, North Carolina would maintain jurisdiction under the significant connection test.  That is, when there is no home state under G.S. 50A-201(a)(1) or a court declines to exercise jurisdiction, a court may look to the state with a significant connection to the child. *See id.* § 50A-201(a)(2).  The state with a significant connection is a state the child and a parent or a person acting as a parent have a significant connection beyond physical presence, and substantial evidence is present in the state regarding "the child's care, protection, training, and personal relationships[.]" *Id.* § 50A-201(a)(2)(b).

Under the significant connection test, North Carolina remains the proper state to exercise jurisdiction.  First, Riley resides in North Carolina with Grandmother who is a "person acting as a parent."  Second, Riley has resided with Grandmother in North Carolina since December 2019, is enrolled in school in North Carolina, and Grandmother has provided all financial support for Riley's care and maintenance since December 2019.  Additionally, Riley is attending speech therapy in North Carolina and has family members in the North Carolina community assisting with her care.  Therefore, even if jurisdiction was declined or there was no home state, North Carolina would remain the proper state to exercise jurisdiction in this case under the significant connection test.

2. Unjustifiable Conduct

Alternatively, Mother contends the trial court should have declined to exercise jurisdiction under G.S. 50A-208(a) due to Grandmother's "unjustifiable conduct."

Regarding "unjustifiable conduct" and jurisdiction, G.S. 50A-208(a) states:

> Except as otherwise provided in G.S. 50A-204 or by other law of this State, if a court of this State has jurisdiction under this Article because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction[.]

*Id.* § 50A-208(a). This statute does not prevent a North Carolina court from exercising jurisdiction when any one of three exceptions apply. *See id.* § 50A-208(a)(1)–(3). The third exception states: G.S. 50A-208(a) will not apply when "[n]o court of any other state would have jurisdiction under the criteria specified in G.S. 50A-201 through 50A-203." *Id.* § 50A-208(a)(3). This exception applies here.

Under the third exception, North Carolina is the only proper state to exercise jurisdiction in this case. Pursuant to an initial custody determination, a state may exercise jurisdiction as the home state or under the significant connection test. *See id.* § 50A-201. If a state declines to exercise home state jurisdiction and/or there is no state with a significant connection, the more appropriate forum under G.S. 50A-207 or G.S. 50A-208 may exercise jurisdiction. *See id.* at § 50A-201(a)(3). Lastly, if no court of any state has jurisdiction, then a court may exercise jurisdiction in its discretion. *Id.* at § 50A-201(a)(4).

As previously stated, North Carolina is the home state under G.S. 50A-201(a)(1). Even if North Carolina was not the home state or declined to exercise such, it would be the state with the significant connection making an exercise of jurisdiction proper. *See id.* § 50A-201(a)(2). Similarly, G.S. 50A-201(a)(3) and G.S. 50A-201(a)(4) are inapplicable as North Carolina may exercising jurisdiction under N.C.G.S. § 50A-201(a)(1)-(2). Similarly, North Carolina remains the proper state to exercise jurisdiction under G.S. 50A-202 (exclusive, continuing jurisdiction) or G.S. 50A-203 (jurisdiction to modify determination). Therefore, because North Carolina is the only proper state to exercise jurisdiction, even assuming Grandmother engaged in "unjustifiable conduct," the jurisdictional bar of G.S. 50A-208(a) cannot be invoked.

Thus, on *de novo* review, we conclude the trial court correctly determined North Carolina has jurisdiction under the UCCJEA regarding the child custody determination and visitation of Riley.

### B. Waiver of Constitutionally Protected Parental Rights

Next, Mother makes several arguments concerning the permanent custody order. We address Mother's argument that because the Power of Attorney was temporary, she did not act inconsistent with her constitutionally protected parental rights and voluntarily waive them. Regardless of Mother's argument, because the trial court's order is unclear as to whether the trial court applied the "clear and convincing" standard, we vacate the order and remand for findings of fact consistent therewith. Indeed, our Supreme Court has held that it must be apparent that the

trial court determined a parent acted inconsistent with her constitutional rights by "clear and convincing" evidence. *David N. v. Jason N.*, 359 N.C. 303, 307 (2005). And we have vacated an order and remanded for additional findings where the trial court failed to state that it had made its determination based on the "clear and convincing" standard. *Bennett*, 170 N.C. App. at 429.

Because Mother's remaining two arguments rely in part on the trial court's conclusion that Mother acted inconsistent with her constitutionally protected status, we decline to address them.

III.    Conclusion

We conclude the trial court properly exercised subject matter jurisdiction under the UCCJEA and no unjustifiable conduct under G.S. § 50A-208(a) otherwise bars jurisdiction. The trial court, however, failed to state that it applied the clear and convincing standard in the permanent order as to whether Mother acted inconsistent with her constitutionally protected status. Thus, we must vacate the order and remand on the remaining issues for findings of fact consistent with this standard of evidence.

VACATED AND REMANDED.

Panel consisting of Chief Judge DILLON and Judges STROUD and GORE.

Report per Rule 30(e).