TYSON, Judge.
 

 *572
 
 Defendant appeals from an order modifying custody of his minor child. We reverse the order and remand.
 

 I. Background
 

 This appeal is before this Court a second time.
 
 Mastny v. Mastny
 
 , --- N.C. App. ----,
 
 796 S.E.2d 402
 
 , 2017 N.C. App. LEXIS 101 (2017) (unpublished) (hereinafter "
 
 Mastny I
 
 "). Jamie Lunsford Mastny ("Plaintiff") and Chad Joseph Mastny ("Defendant") originally settled the custody arrangements for their minor child, Tyler, by entering into a consent order in 2012.
 

 This order entitled Defendant to "alternating weekend visitation from Thursday at the recess of school until Monday morning" when Tyler would return to school. On the weeks Defendant did not have weekend visitation, he was entitled to overnight visitation on Thursdays.
 

 *573
 
 Additionally, Defendant was granted two "floating days" per month for visitation. Each party was guaranteed one week of vacation with Tyler in the summer.
 

 Between 2013 and 2015, both Defendant and Plaintiff sought to modify the custody arrangement. The use and scheduling of the "floating days" was at issue in each motion for modification. The trial court first mandated make-up visitation days for Defendant in 2013, since Plaintiff had allegedly denied his exercise of these floating visitation days seven times without reason.
 

 In the 2015 order modifying custody, the trial court eliminated these "floating days" from the custody schedule. During the school year, Defendant was entitled to an alternating weekend visitation spanning from the end of the school day on Friday to the beginning of school on Monday. Summer visitation was to follow an alternating week schedule.
 

 Defendant appealed the 2015 order to this Court. In
 
 Mastny I
 
 , this Court reversed the portions of the 2015 order that had modified the custody schedule from the prior consent order, and remanded to the trial court.
 
 Mastny
 
 ,
 
 2017 WL 676860
 
 , at *7, 2017 N.C. App. LEXIS 101, at *26. Upon remand, the trial court was ordered to
 

 revisit the question of whether there has been a significant change of circumstances affecting Tyler's welfare and, if so, whether modification of the custody provisions of the prior consent order would be in Tyler's best interest.
 
 If
 
 the trial court decides that modification of the custody provisions of the prior consent order are warranted, it
 
 shall
 
 demonstrate through sufficient additional relevant findings of fact that there is a nexus between any change in circumstances and Tyler's welfare, and that any particular modifications of the custody portions of the prior consent order are in Tyler's best interest.
 

 Id.
 

 (emphasis supplied).
 

 Upon remand, the trial court did not receive or hear any additional evidence. On 17 May 2017, the trial court entered an order modifying child custody that contained additional findings of fact and conclusions of law, but retained the identical custody schedule from 2015. Defendant timely appealed.
 

 II. Jurisdiction
 

 An appeal of right lies to this Court from a child custody order entered in a district court
 
 *244
 
 pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2017).
 
 *574
 

 III. Issues
 

 Defendant argues the trial court erred by failing to follow the mandates of
 
 Mastny I
 
 by: (1) making certain findings of fact; (2) failing to make sufficient findings of fact to support conclusion of law #4; (3) failing to show modification was in the best interests of Tyler and in response to the substantial changes; (4) reducing Defendant's physical custody time; and, (5) failing to promote the policy of the State articulated in
 
 N.C. Gen. Stat. § 50-13.01
 
 .
 

 IV. Analysis
 

 A. Standard of Review
 

 "When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence."
 
 Shipman v. Shipman
 
 ,
 
 357 N.C. 471
 
 , 474,
 
 586 S.E.2d 250
 
 , 253 (2003) (citation omitted). "[T]he trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings."
 
 Peters v. Pennington
 
 ,
 
 210 N.C. App. 1
 
 , 12-13,
 
 707 S.E.2d 724
 
 , 733 (2011). Conclusions of law must be supported by the findings of fact.
 

 Id.
 

 "Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal."
 
 Everette v. Collins
 
 ,
 
 176 N.C. App. 168
 
 , 171,
 
 625 S.E.2d 796
 
 , 798 (2006) (citation omitted).
 

 B. Findings of Fact
 

 Defendant argues insufficient evidence supports Findings of Fact 24(j), 24(g), 15A(a), 15A(b), 15A(c), 15A(e), 16A, 17A, and 27. Plaintiff only addresses Finding of Fact 24(j) in her brief.
 

 Finding of Fact 24 states, in relevant part:
 

 24. Since the entry of this Order, there has been a substantial change of circumstances justifying this court to assume jurisdiction to modify the August 13, 2012 Order as it relates to the custodial schedule in that:
 

 ....
 

 (g) Plaintiff sometimes requires Tyler to facetime with his father outside;
 

 ....
 

 (j) Defendant has inappropriate boundaries concerning Plaintiff. Following the first day of trial and
 
 *575
 
 after learning Plaintiff's salary at Trinity Academy, Defendant called Plaintiff's boss to ask him to give her a raise. Defendant had previously asked Plaintiff's employer for information on the tuition discount Plaintiff was entitled to as a result of her employment at Trinity. This behavior undoubtedly put the Plaintiff's employment at Tyler's school, and the family's financial security, at risk[.]
 

 Finding of Fact 24(j) was partially included in the 2015 modification order, with the final sentence being added upon remand. We previously found "Defendant's having 'inappropriate' boundaries concerning Plaintiff could theoretically affect Tyler's welfare, but there are no findings of fact supporting any conclusion that this has happened."
 
 Mastny I
 
 ,
 
 2017 WL 676860
 
 , at *8, 2017 N.C. App. LEXIS 101, at *23.
 

 Plaintiff argues the effects of Defendant's actions are "self-evident" requiring no "evidence directly linking the change to the effect on the child."
 
 In re A.C.
 
 ,
 
 247 N.C. App. 528
 
 , 549,
 
 786 S.E.2d 728
 
 , 743 (2016) (citation and internal quotation marks omitted). Whether or not Defendant's actions contacting Tyler's school were inappropriate, it cannot be presumed, and is hardly "self-evident," that Defendant's contacting Plaintiff's employer "undoubtedly" jeopardized Plaintiff's position at the school or placed the "family's financial security [ ] at risk." No new evidence was offered at the hearing upon remand. This finding is unsupported by any substantial evidence.
 
 See
 

 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 .
 

 Finding of Fact 24(g) is also not supported by competent evidence. Finding 24(g) was slightly modified from the 2015 order, where it was labeled 15(g) and read: "Plaintiff does not allow [Tyler] to facetime with Defendant in her residence; rather, she makes the minor child go outside to facetime with Defendant." This Court previous found
 
 *245
 
 "substantial record evidence" to support the 2015 finding.
 
 Mastny
 
 ,
 
 2017 WL 676860
 
 , at *4, 2017 N.C. App. LEXIS 101, at *12. As no new evidence was taken or received upon remand, no evidence supports the change of Plaintiff "making" Tyler go outside to facetime with his father to "sometimes requir[ing]" Tyler to go outside. It is unclear why the trial court altered this Finding of Fact.
 

 A similar change in the Findings of Fact from the 2015 order can be seen in Finding 17A, which reads:
 

 17[A]. As stated previously, there have been disagreements about the floating days which have prevented the Defendant from having the children for specific events such as the family wedding and NC State football games.
 

 *576
 
 Plaintiff has sometimes been inflexible on these matters. She has also made the child talk with his father outside the house on occasion. Despite these things, Plaintiff is less likely, based on the evidence presented, to involve the children directly in the parties' conflict.
 

 This finding not only reiterates the new, occasional nature of Plaintiff requiring Tyler to speak to his father outside, but also modified the related finding from the 2015 order, which read:
 

 16. Plaintiff has unreasonably denied Defendant extra custodial time with the children for specific events and refused to modify the schedule that would have provided the children with experiences with Defendant such as the family wedding and NC State football games.
 

 Upon remand, and without additional evidence to support the change, the trial court now finds Defendant was "prevented ... from having the children for specific events" because the Plaintiff "has sometimes been inflexible," whereas previously the trial court had found Plaintiff's denial of these requests unreasonable. There is no substantial evidence to support the changes in Finding of Fact 17A. We will consider in greater detail below the trial court's conclusion that the Plaintiff is less likely to involve the children in the parties' conflict.
 

 Finding of Fact 15A reads in relevant part:
 

 15[A]. These changes have affected Tyler negatively in the following ways:
 

 (a) Because the parties communicate ineffectively and cannot agree on floating days, Tyler has missed certain sporting, cultural and family events such as NC State Football games and an out-of-state wedding[.]
 

 (b) There are no consistent rules or expectations between homes concerning the use of phones, on-line gaming, and television and movie viewing. This makes it difficult for Tyler, an eight year old boy [now ten years old], who is going back and forth between homes regularly[.]
 

 (c) Tyler is aware of his parent's conflict.
 

 ....
 

 *577
 
 (e) Because the parties do not communicate effectively and there are multiple exchanges during the school week, Tyler has not had things for school such as uniforms and supplies for classroom projects and/or activities.
 

 Substantial record evidence supports Findings 15A(a), (c), and (e). There is evidence to support the lack of consistent rules as indicated in Finding 15A(b). We return to these Findings as they relate to the nexus between the substantial change and Tyler's welfare and best interests, below.
 

 No substantial evidence supports Finding of Fact 16A:
 

 16[A]. The changes have affected Tyler positively in the following ways:
 

 (a) Due to Plaintiff's new work schedule at the child's school, Plaintiff is able to be involved with the children's educational pursuits on a daily basis. This has proved beneficial to Tyler to have a parent employed at his school as evidenced by his good grades.
 

 No evidence or prior findings tends to show Tyler was doing poorly in school prior to Plaintiff's employment therewith, nor is there evidence that his good grades are related to his mother's employment at the school.
 

 Finding of Fact 27 is most appropriately considered as a conclusion of law, and is discussed below.
 

 *246
 

 C. Nexus Between Changed Circumstances; Effect on Welfare and Best Interests
 

 Defendant argues the trial court failed to find facts showing the required nexus between the changed circumstances and Tyler's welfare, and erred by concluding:
 

 4. Modification of the child custody provisions set forth in the Consent Order is in Tyler's best interest, promotes his best interest, and directly addresses needs indicated by the substantial changes in circumstances affecting Tyler's best interest.
 

 "The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child."
 

 *578
 

 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 . The trial court can only modify an existing order after it determines the change affected the child's welfare and modification is in the child's best interests.
 

 Id.
 

 "[Be]fore a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection."
 
 Id.
 
 at 478,
 
 586 S.E.2d at 255
 
 (citation omitted). Upon remand, the trial court attempted to meet this requirement through modifying the wording of the findings it had previously made in 2015, but failed to follow the mandate we prescribed in
 
 Mastny I
 
 .
 

 The modification in Finding 17A, "Plaintiff is less likely, based on the evidence presented, to involve the children directly in the parties' conflict," is unsupported by the evidence. The trial court attempted to soften its findings concerning Plaintiff's behavior in order to "shoehorn" this finding and tie the changed circumstances to Tyler's welfare. The 2015 and 2017 modifications removed the conflict over the "floating days," but it appears Plaintiff would be less likely to involve the children in the conflict only because she would not be provided an opportunity to unreasonably deny Defendant access to the children, as she had in the past.
 

 We previously discussed how Finding of Fact 15A, related to the 2015 modification:
 

 Finding[ ] 15A(a) ... involve[s] Plaintiff's unwillingness to allow Defendant access to Tyler for specific events. To the extent Plaintiff's unwillingness in this regard constituted a substantial change that affected Tyler's welfare, it was a change of Plaintiff's making, and the 21 December 2015 modification order does not address this situation. The concerns implicit in findings 15A(c) and (d) are likewise not addressed by the 21 December 2015 order. Rearranging the custody schedule will not serve to make rules between the two homes more consistent, nor remove Tyler from the "middle" of any conflicts between Plaintiff and Defendant, with the possible exception that removal of the "floating" days dispenses with one source of prior conflict.
 

 ....
 

 In finding 15A(e) the trial court found that "[t]he children have not had things for school such as uniforms and supplies for classroom projects and/or activities." By reducing the number of times Tyler changes custody during
 
 *579
 
 the school year to once every two weeks instead of once every week, the trial court has reduced the chances that Tyler might not have access to certain items he needs for school because they have been left at the other parent's home. However, we do not find that this benefit is enough to support a conclusion that modifying the consent order in the manner done in the 21 December 2015 order was in Tyler's best interest. While it may well be correct ... that "[a] specific and detailed custody order will reduce the conflict between the parties[,]" we hold there are insufficient findings of fact concerning how the trial court's modifications will reduce conflict between Plaintiff and Defendant to such an extent that the modifications made were in Tyler's best interest.
 

 Mastny
 
 ,
 
 2017 WL 676860
 
 at *8, 2017 N.C. App. LEXIS 101, at *22-24. This reasoning from
 
 Mastny I
 
 equally applies to the current appeal.
 

 *247
 
 Finding of Fact 27 appears to have been drafted by the trial court as a way to remedy the errors in the 2015 order. Finding 27 states:
 

 27. It is in the best interest of the minor child that the number of back and forth exchanges during the school year be reduced and that Tyler has a more consistent "home base" during the school year. This will enable Tyler to have more consistent rules and expectations at home during the school year, and reduce the number of times he is missing equipment or school supplies. It is [i]n Tyler's best interest that the "home base" be Plaintiff's home for the following reasons:
 

 a. Plaintiff is employed at the children's school and has more time to spend with the [sic] Tyler during the work/school week;
 

 b. Plaintiff is able to transport Tyler to and from school daily;
 

 c. Tyler's time in the care of Defendant's employees and at Defendant's office will be reduced;
 

 d. Tyler will have regular and consistent time with Reagan; and
 

 e. Plaintiff is less likely to involve the children in the conflict between the parties.
 

 *580
 
 Again, no finding shows how changing custody would make the rules between the homes more consistent, nor does the reduction of the number of times he may be missing something for school justify a change in custody.
 
 See
 
 id.
 

 Plaintiff's employment at the children's school does not have any bearing on Tyler's custody, nor does it support a conclusion that Plaintiff's home is a more appropriate "home base." No evidence suggests Defendant has had any issue with taking the children to or from school. The fact that Defendant employs a caretaker for the children while he finishes his workday does not support a conclusion that his home is not appropriate for weekday visitation. In fact, the record shows the children attend after-school care or activities while Plaintiff also finishes her workday at the school.
 

 "There are no findings, and there is no evidence, that Tyler will be afforded more opportunities to spend time with Reagan as a result of the modification[.]"
 
 Id.
 
 at 8, 2017 N.C. App. LEXIS 101, at *23. As stated above, the evidence does not support the conclusion that Plaintiff is less likely to involve the children in the parties' conflict. "In short, these findings of fact do not support a conclusion that the modification of the existing custody consent order, in the manner ordered by the trial court, served to promote Tyler's best interests."
 
 Id.
 

 The trial court failed to follow and apply the mandate set forth in
 
 Mastny I
 
 . As before,
 

 the trial court's findings of fact are not sufficient to demonstrate the nexus between the change of circumstances and any effect on Tyler's welfare. Further, the 21 December 2015 order [and the 2017 order on remand] fails to demonstrate that the particular remedy chosen-a significant reduction in Defendant's custodial time for nine months with an increase in Defendant's custodial time for three months-addresses the concerns raised in light of any change in circumstances.
 

 Id.
 
 at *8, 2017 N.C. App. LEXIS 101, at *25.
 

 We reverse the 2017 order and remand. In light of our holding, we do not address Defendant's argument concerning the policy of
 
 N.C. Gen. Stat. § 50-13.01
 
 (2017).
 

 V. Conclusion
 

 The holding in
 
 Mastny I
 
 was clear: the trial court had failed to find a nexus between the changed circumstances and Tyler's welfare, and
 
 *581
 
 failed to support its conclusion that the specified modification addressed the changes and was in Tyler's best interest.
 
 See
 

 Mastny
 
 ,
 
 2017 WL 676860
 
 , at *8, 2017 N.C. App. LEXIS 101, at *25-26. This Court also provided detailed guidance based upon
 
 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 . Instead of making findings upon remand to demonstrate the nexus between the substantial changes and Tyler's welfare, the trial court merely rearranged and reworded its previous order, bringing the same failures to this Court for a second time.
 
 *248
 
 It appears the trial court did not reconsider its conclusion there had been a substantial change. It may still do so upon this remand. If the court still concludes a substantial change has occurred, the trial court must make the required findings of fact to demonstrate how the substantial change affects Tyler's welfare. If a substantial change did not occur, or if it did occur, but it did not affect the child's welfare, "the court's examination ends, and no modification can be ordered."
 
 Shipman
 
 ,
 
 357 N.C. at 474
 
 ,
 
 586 S.E.2d at 253
 
 .
 

 If the trial court finds a substantial change occurred that affected Tyler's welfare, the trial court must then determine if the proposed modification is in Tyler's best interest
 
 and
 
 is in response to the identified substantial changes. All of these findings must be supported by substantial evidence in the record. As several years have passed since a full evidentiary hearing was conducted in this matter, new and additional evidence may be presented upon remand.
 

 This Court previously reversed portions of the 2015 order and remanded. The trial court subsequently entered the 2017 order, presently before us, which is indistinguishable in substance from the 2015 order. We reverse the 2017 order, effectively putting the parties back under the initial 2012 consent order.
 

 We again remand to the trial court for additional findings and conclusions consistent with this opinion and the prior mandate set forth in
 
 Mastny I
 
 . Any visitation due to Defendant under the 2012 consent order, but missed due to Plaintiff's actions and the trial court's 2015 and 2017 orders, must be credited and provided to Defendant upon remand.
 
 It is so ordered.
 

 REVERSED AND REMANDED.
 

 Judges ELMORE and ZACHARY concur.