IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-691

Filed: 17 March 2020

Johnston County, No. 17 CVD 1533

LAURA SUE TUEL, Plaintiff,

v.

ANTHONY RYAN TUEL, Defendant.

Appeal by defendant from order entered 18 March 2019 by Judge Addie H. Rawls in Johnston County District Court. Heard in the Court of Appeals 5 February 2020.

*No appearance for plaintiff.*

*Tharrington Smith, LLP, by Evan B. Horwitz and Jeffrey R. Russell, for defendant.*

ARROWOOD, Judge.

Anthony Ryan Tuel ("defendant") appeals from the trial court's Order for Permanent Child Custody and Temporary Child Support granting primary physical custody to his former wife Laura Sue Tuel ("plaintiff") and permitting her to move with their children to Indiana. For the following reasons, we vacate and remand.

I. Background

Plaintiff and defendant married on 21 December 2002. Two children were born of the marriage on 17 April 2014 and 12 September 2016. The parties and their

children resided in Johnston County, North Carolina. On 16 May 2017, plaintiff filed a complaint for child custody. The following day she left the marital residence and moved with the children to her parent's home in Rushville, Indiana.

Plaintiff and the children stayed with her parents in Indiana for three months. With the consent of the parties, on 21 August 2017 the trial court entered a Memorandum of Judgment/Order establishing the parties' temporary child custody rights and obligations. This order provided for the return of plaintiff and the children to North Carolina, pending permanent resolution of the parties' custody dispute.

On 5 July 2018, the trial court held a hearing adjudicating a permanent resolution to the issue of custody of the children. The trial court heard evidence and testimony from both parties. This evidence, in relevant part, tended to show the following facts. The parties experienced marital difficulties predating the birth of their children that were exacerbated by the added responsibilities of parenthood. Plaintiff suffered from mental health issues since adolescence, including two suicide attempts during her college years. The trial court received into evidence numerous journal entries and online forum posts written by plaintiff, as well as records from her therapy sessions, indicating that these issues stemmed from what she characterized as an abusive, disciplinarian upbringing by her religious fundamentalist parents. She underwent mental health therapy from March to June

of 2017 and was diagnosed with "adjustment disorder with mixed anxiety and depressed mood[.]"

Plaintiff ceased all contact with her parents shortly after the birth of the parties' first child in 2014. The reason for this estrangement was in part due to plaintiff's resentment about her own upbringing and concerns with how her parents' religious beliefs would conflict with the worldview under which they planned to raise their own children. Nonetheless, amid increasing marital strife and a desire to separate from defendant, plaintiff reinitiated contact with her family in May of 2017 for support. After a visit from plaintiff's mother that month, plaintiff filed a complaint seeking custody of the children and relocated them to her parents' home in Rushville, Indiana.

After hearing the evidence at trial, the trial court entered an Order for Permanent Child Custody and Temporary Child Support on 18 March 2019. The order granted primary physical custody to plaintiff, permitted plaintiff to move with the children to Rushville, Indiana, and granted defendant secondary physical custody. Defendant appeals from this order.

## II.    Discussion

On appeal, defendant argues that the trial court abused its discretion in its custody order by concluding as a matter of law that granting plaintiff primary custody would be in the best interests of their children, despite: (a) failing to make adequate

findings of fact addressing the factors in *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 418 S.E.2d 675 (1992), relevant to determining custody upon relocation of a parent to a foreign jurisdiction; and (b) otherwise making findings supporting this conclusion that were not supported by competent evidence. We agree with defendant's first contention, and therefore do not reach his second argument.

The trial court failed to make findings on several *Ramirez-Barker* factors relevant to material issues raised by the evidence at the hearing. In addition, many of the findings upon which it did base its conclusion of law are internally inconsistent. Therefore, we vacate and remand for entry of a new custody order not inconsistent with this opinion.

## A.     Standard of Review

"Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal." *Everette v. Collins*, 176 N.C. App. 168, 171, 625 S.E.2d 796, 798 (2006) (citation omitted). "Before awarding custody of a child to a particular party, the trial court must conclude as a matter of law that the award of custody to that particular party 'will best promote the interest and welfare of the child.'" *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978) (quoting N.C. Gen. Stat. § 50-13.2(a) (2019)). We review this conclusion of law *de novo* to determine whether it is adequately supported by the trial court's findings of fact. *Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008) (citation omitted).

"The findings of fact are conclusive on appeal if there is evidence to support them, even if evidence might sustain findings to the contrary. The evidence upon which the trial court relies must be substantial evidence and be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Everette*, 176 N.C. App. at 170, 625 S.E.2d at 798 (internal citations omitted).

B.    *Ramirez-Barker* Factors

Defendant first argues that the trial court did not make findings necessary to support an order granting primary physical custody to a parent relocating to another jurisdiction. We agree.

> In exercising its discretion in determining the best interest of the child in a relocation case, factors appropriately considered by the trial court include but are not limited to: the advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the courts of North Carolina; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent. Although most relocations will present both advantages and disadvantages for the child, when the disadvantages are outweighed by the advantages, as determined and weighed by the trial court, the trial court is well within its discretion to permit the relocation.

*Ramirez-Barker*, 107 N.C. App. at 79-80, 418 S.E.2d at 680 (internal citation omitted); *see also Evans v. Evans*, 138 N.C. App. 135, 142, 530 S.E.2d 576, 580 (2000) (quoting *Ramirez-Barker*).

We disagree with defendant insofar as he suggests that a relocation custody order is fatally deficient if the trial court fails to make explicit findings addressing each and every *Ramirez-Barker* factor. As we noted in *Frey v. Best*,

> although the trial court may appropriately consider these factors, the court's primary concern is the furtherance of the welfare and best interests of the child and its placement in the home environment that will be most conducive to the full development of its physical, mental and moral faculties. All other factors, including visitorial [sic] rights of the other applicant, will be deferred or subordinated to these considerations, and if the child's welfare and best interests will be better promoted by granting permission to remove the child from the State, the court should not hesitate to do so. Naturally, no hard and fast rule can be laid down for making this determination, but each case must be determined upon its own peculiar facts and circumstances.

189 N.C. App. 622, 633-34, 659 S.E.2d 60, 69-70 (2008) (internal quotation marks, alteration, emphasis, and citations omitted). Nonetheless, these factors will be highly relevant to the best interest of the child in nearly all of these situations.

In its custody order, the trial court made abundantly clear that its primary consideration in granting plaintiff primary custody and permitting her to move with the children to Rushville, Indiana was based upon its finding that:

> It would be in the best interest of the minor children for them to be able to locate with the plaintiff to Rushville, Indiana given the strong ties of the Plaintiff's family and other support systems that would assist the Plaintiff with the care of the minor children. . . . The plaintiff's parents, her mother in particular, are willing and able to provide the care for the minor children to alleviate the cost and need of outside childcare.

The court found that both plaintiff and defendant would be fit and proper to share custody. It also found the children thrive under the care of each. However, the court gave no explanation why primary custody with plaintiff would be in the children's best interests, other than in reference to plaintiff's family support network in Rushville, Indiana.

Other than the advantage of a family support network for assistance in childcare, which defendant challenges and we discuss *infra*, none of the trial court's findings engage in any comparison between Rushville, Indiana and defendant's home in Johnston County, North Carolina, or each area's relative potential to enrich the children's lives. The court found that Rushville, Indiana is situated in a rural area and has the usual amenities of a mid-sized town. Yet the court failed to make any finding comparing this area to Johnston County, North Carolina, or provide any explanation as to why Indiana would otherwise provide the children with a more enriching environment.

Additionally, the court gives short shrift to several of the other *Ramirez-Barker* factors, reciting them as findings without engaging in any substantive analysis of its

conclusions or relating them to the best interests of the children. For example, the trial court found that the distance between Indiana and North Carolina would require modification of the current custody schedule to one in which the children visited defendant during seasonal school breaks and holidays. However, the court omitted any consideration of how such a visitation schedule would preserve and foster the children's relationship with defendant or serve their best interests. The court also found that defendant opposed the relocation of the children. Rather than assessing the integrity of and reasons for his opposition, the trial court instead chose to downplay his opposition by finding that he unreasonably failed to acknowledge his role in the failure of the marriage. A party's fault for the failure of the marriage is not an appropriate consideration in determining whether relocation would be in the best interests of the children. *In re McGraw Children,* 3 N.C. App. 390, 393, 165 S.E.2d 1, 3 (1969) ("In a custody hearing it is the welfare of the children which is the concern of the courts, not the technicality of which parent was at fault in bringing about the state of separation."). In a custody order with 31 findings of fact, the trial court relates the effect of relocation to the best interests of the children only a few times outside the context of plaintiff's family support network.

Given the cursory manner in which the trial court addressed the other *Ramirez-Barker* factors and its failure to otherwise note alternative considerations indicating that relocation of the children to Indiana with plaintiff would be in their

best interests, its conclusion of law rests upon its finding of an advantage in the family support network in Indiana. This finding alone cannot carry the weight of the custody order. *See Evans*, 138 N.C. App. at 142, 530 S.E.2d at 580 ("When the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence and the welfare of the child is subserved, then the order entered thereon must be vacated and the case remanded for detailed findings of fact.") (internal quotation marks, alteration, and citation omitted); *Carpenter v. Carpenter*, 225 N.C. App. 269, 273, 737 S.E.2d 783, 787 (2013) ("The quality, not the quantity, of findings is determinative. This custody order contains eighty findings of fact, but Plaintiff correctly notes that many of the findings of fact are actually recitations of evidence which do not resolve the disputed issues. The findings also fail to resolve the primary issues raised by the evidence which bear directly upon the child's welfare.")

Assuming *arguendo* its sufficiency to support the order, this finding is undermined by unresolved contradictions with several other findings of fact in the order. The trial court based its finding that plaintiff's family support network in Indiana would serve the children's best interests in part on its finding that "[t]he minor children . . . appear to have long standing relationships with their extended family members, with the exception of a three year period of time that ended a few weeks prior to the parties' separation, during which the plaintiff was estranged from

her parents." The court also found that the children were born 17 April 2014 and 12 September 2016, and that plaintiff and defendant separated on 17 May 2017. Thus, the court's findings make clear that the children were four and one years old, respectively, at the time of the hearing on 5 July 2018, and only had contact of any sort with plaintiff's parents for around one year. The court does not explain how such young children could develop "long standing relationships" with plaintiff's family over so short a period. We find no competent evidence which would support this determination.

Furthermore, the trial court makes numerous findings that suggest contact with plaintiff's parents would not be in the children's best interests. The court found that part of the reason for plaintiff's estrangement from her family was attributable to defendant's dislike of them due to "conversations that plaintiff may have had with defendant concerning the plaintiff's relationship with her parents and/or some childhood experiences that plaintiff did not have good feelings about." The court further found that plaintiff had kept a journal and written other materials about her parents in her twenties that "made derogatory statements about the plaintiff's parents, referring to physical abuse and emotional abuse."

Although the court then went on to note that these writings were "her way of venting[,]" occurred over ten years ago, and "are not indicative of the plaintiff's present relationship with her parents[,]" notably absent from the order is any

determination as to whether the trial court believed the accounts of abuse. In 2017, the plaintiff also told her therapist that "her parents were physically, verbally, and emotionally abusive as a means of 'discipline[.]'" Other than their availability to provide transportation and supervision of the children if plaintiff secures employment in Indiana, the trial court does not make any countervailing findings indicating that contact with plaintiff's parents would be beneficial to the children. Given its mention of plaintiff's poor relationship with her parents in her youth, this omission is particularly striking.

The trial court may very well have believed plaintiff's prior accounts of her parents' abusive behavior to be mere exaggeration and believed her parents to be suitable caretakers that would enrich the children's lives. However, because the court's order lacks any such findings, we are unable to ascertain why contact with plaintiff's parents would better serve their interests than the custody arrangement in effect at the time of the hearing. This also renders the custody order's findings of fact facially deficient.

We also note inconsistencies in the trial court's findings addressing plaintiff's mental health issues and their bearing upon her fitness to have primary custody of the children. The court found that plaintiff's mental health issues, including "adjustment disorder with mixed anxiety and depressed mood[,]" "more than likely revolved around issues of being involved in a bad marriage, as well as being the

primary caregiver of two minor children. . . . Nothing about the plaintiff's mental health history negatively impacts her fitness as a parent." Thus, the court finds that plaintiff's mental health issues are partially caused by the burden of being the children's primary caregiver, yet fails to explain how these issues would not be exacerbated by awarding her primary custody of the children and placing them in daily contact with her parents, with whom she had a dysfunctional relationship at best.

For the aforementioned reasons, we find that the trial court's findings of fact do not support its conclusion of law that granting plaintiff primary physical custody of the children and permitting their relocation to Indiana would be in their best interests. Therefore, the trial court abused its discretion in so ordering.

## C.    Evidentiary Support

Defendant also argues that the custody order contains numerous findings of fact that are not supported by competent evidence. Because we have found these findings facially deficient and inadequate to support the trial court's conclusion of law, we need not reach the question of their evidentiary support.

## III.    Conclusion

"[A]lthough it is not so as a matter of law, it will be a rare case where the child will not be adversely affected when a relocation of the custodial parent and child requires substantial alteration of a successful custody-visitation arrangement in

which both parents have substantial contact with the child." *Ramirez-Barker*, 107 N.C. App. at 79, 418 S.E.2d at 680. The glaring deficiencies and contradictions in the trial court's findings of fact render them inadequate to support its conclusion of law and prevent us from determining whether this is such a rare case. We therefore vacate the custody order and remand for entry of a new order not inconsistent with this opinion.

VACATED AND REMANDED.

Judges ZACHARY and MURPHY concur.